IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SUPRIYA SUMANTH, ET AL.

   Plaintiffs

  vs.        CIV. ACTION NO. MJG-17-2450

ESSENTIAL BRANDS, INC.,
D/B/A KIDDIE ACADEMY
DOMESTIC FRANCHISING, LLC

   Defendants

* * * * * * * *

MEMORANDUM AND ORDER
RE: MOTION FOR ATTORNEYS' FEES AND COSTS

The Court has before it Defendants' Motion for Award of Attorneys' Fees and Costs [ECF No. 10] and the materials submitted relating thereto. The Court finds that a hearing is unnecessary.

I. BACKGROUND

Ms. Supriya Sumanth and Mr. Sumanth Nandagopal (together, "Plaintiffs")[1] are a married couple who sought to purchase a daycare franchise from Essential Brands, Inc., doing business as Kiddie Academy Domestic Franchising, LLC (together, "Defendants"). Compl. ¶ 2, ECF No. 2. The Complaint alleged that during the business discussions, purchase, and construction

---

[1] "Wonder World Learning, LLC" is also a named Plaintiff. The Certificate of Formation attached to the Complaint [ECF No. 2-1] shows that Sumanth and Nandagopal are its managers.

of the daycare facility from 2011 to 2016, the Defendants engaged in intentional and negligent misrepresentation, fraud in the inducement, and defamation against Plaintiffs.

A. Procedural History

Plaintiffs filed their Complaint in Maryland's Circuit Court for Cecil County (Case No. C-07-cv-17-00435), and the case was properly removed to federal court on August 25, 2017 [ECF No. 1].  On September 27, 2017, Defendants filed a Motion to Dismiss Complaint for Failure to State a Claim Upon Which Relief May Be Granted [ECF No. 7], arguing that Plaintiffs' claims are barred by statutes of limitations and contain only vague and conclusory accusations.  Two days later, Plaintiffs filed a Notice of Voluntary Dismissal [ECF No. 8].  Defendants now seek attorneys' fees and costs.

B. Factual Background[2]

Plaintiffs began inquiring about opening a daycare operation franchise from Defendants in February 2011. Compl. ¶ 5. During preliminary discussions, Defendants required them to pay a first installment of the total franchise fee, advised them that they needed to increase their net worth, and advised them

---

[2] The following summary of "facts" is based upon the Complaint and is not agreed upon by Defendants.

about the process of approving a franchise site.  Id. ¶¶ 6-9.
During this initial negotiation phase, Plaintiffs were allegedly lulled into believing that they would receive significant support from Defendants throughout the entire franchising process, including guidance in applying for a loan, advice regarding architects and contractors, review of construction plans, training for employees, assignment of a "Franchise Business Consultant," and general business and marketing advice. Id. ¶¶ 10-17.  These assurances allegedly induced Plaintiffs into signing the Preliminary Agreement in June 2011 and move forward with the franchise purchase.  Id. ¶ 20.[3]

The process of opening the daycare operation did not proceed smoothly.  The site search took 2.5 years to complete instead of the Plaintiffs' expected 9 months.  Id. ¶ 26.  Then, Plaintiffs' first loan request was rejected and they had to rely on Defendants to find another lender on Defendants' preferred lender list.  Id. ¶ 32.  By that point, Plaintiffs had invested $200,000 and years of time into the project.  Id. ¶ 33.

When construction began, "there were numerous mistakes and lack of support for the plaintiffs by the defendants," including Defendants allegedly budgeting incorrectly for a "splash pad" in the playground area and not informing Plaintiffs about the need

---

[3] The Plaintiffs would eventually sign the operative Franchise Agreement in March 2016.  Def.'s Mot. Ex. A, ECF No. 10-2.

to apply for another permit after redesigning the playground.[4] Id. ¶¶ 36, 39, 43. Defendants' construction expert also allegedly missed items that were necessary for Plaintiffs' facility to meet licensing standards. Id. ¶ 50. When Plaintiffs exceeded their construction budget and decided not to use Defendants' preferred architect, Defendants' agent allegedly became "furious" and withdrew support from Plaintiffs. Id. ¶ 46. During this time, Ms. Sumanth was allegedly referred to as a "liar" and "dishonest in her business practices" by Defendants' agents in internal meetings. Id. ¶ 37.

When Plaintiffs were finally ready to open the daycare operation in August 2015, Defendants allegedly did not assist with Director selection or personnel training. Id. ¶¶ 56–58. The daycare began to operate, but in July 2016 Plaintiffs realized that they were not on track to break even and would consume their entire working capital within a few months. Id. ¶ 59. Instead of assisting Plaintiffs, Defendants allegedly engaged in "personal attacks" against them. Id.

Throughout the negotiations, purchase, and construction of the daycare franchise facility, Plaintiffs stated that they acted upon "false information" provided by Defendants, including "the time it would take the plaintiff's franchise to become

---

[4] As a result, Plaintiffs allegedly operated without a playground for two months after opening the daycare operation. Id. ¶ 43.

4

profitable and the amount of children [enrolled] it would take to do so." Id. ¶ 18.  Plaintiffs alleged that they never received access to Defendants' proprietary information or historical data regarding franchisees' profitability, even though they were promised that information.  Id. ¶¶ 17-18.  They claimed that other franchisees have also been given false and misleading projections of success and promises of business support.  Id. ¶¶ 60-61.  When Plaintiffs pleaded for help, Defendants allegedly "blame[d] the Plaintiffs" and tried to "force the Plaintiffs to sign a release of liability agreement" before offering any support.  Id. ¶ 64.

II. MOTION FOR ATTORNEYS' FEES

Defendants argue that their motion is justified legally because (1) the operative contract provides for attorneys' fees, and (2) the Plaintiffs should be sanctioned for their meritless lawsuit.

A. CONTRACTUAL BASIS FOR AWARD

When interpreting this contract, this Court must follow Maryland choice-of-law rules.  Francis v. Allstate Ins. Co., 709 F.3d 362, 369 (4th Cir. 2013) ("[a] federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules").  Maryland courts

recognize that parties' contractual choice-of-law provisions trump rules that would otherwise apply. Id. ("Such choice-of-law provisions 'trump the conflict of law rules that otherwise would be applied by the court.'") (quoting Jackson v. Pasadena Receivables, Inc., 398 Md. 611, 617 (2007)).

The Franchise Agreement ("Agreement") provides that: "This Agreement and all of its provisions will be . . . interpreted . . . pursuant to the law of the State of Maryland."  Agreement § 27.1, ECF No. 10-2.  Accordingly, the Court will apply Maryland's contract law to this dispute.

Under Maryland law, as a general matter, "'promises by one party to indemnify the other for attorney's fees run against the grain of the accepted policy that parties are responsible for their own fees.'"  Thomas v. Capital Med. Mgmt. Assocs., LLC, 189 Md. App. 439, 468 (2009) (internal citations omitted). "'[A] trial court may award attorneys' fees only ... where ... a contract between the parties specifically authorizes attorneys' fees.'"  Id. (emphasis in original).  As a result, "[c]ontractual attorney's fees provisions must be strictly construed to avoid inferring duties that the parties did not intend to create."  Id.

When interpreting the contract's terms, Maryland courts apply "an objective interpretation of contracts" and "look to the entire language of the agreement, not merely a portion

thereof." Nova Research, Inc. v. Penske Truck Leasing Co., 405 Md. 435, 448 (2008). If the contract is unambiguous, the court must give effect to its plain meaning. Id. However, a contract is "ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." Id.

Maryland courts have engaged in detailed analyses about whether contractual provisions providing for attorneys' fees are enforceable under the specific facts of the case, for example:

- An indemnification provision stating that appellants "shall indemnify and hold CMMA harmless from . . . losses (including reasonable attorneys' fees) . . . which may result against CMMA as a consequence of . . . performance of this Agreement" can only be interpreted to give CMMA a right to attorneys' fees and costs for claims brought by third parties, not for claims brought by the party to the contract. Thomas, 189 Md. App. at 449-50, 472.

- An indemnification provision requiring the customer to "indemnify, and hold harmless Penske . . . against all loss . . . caused or arising out of Customer's failure to comply with the terms of this Agreement" does not include the recovery of attorneys' fees in a first party action establishing the right to indemnity. Nova Research, 405 Md. at 440-41, 451 (2008).

- A surety bond containing an indemnity agreement which stated that it covered "from and against any and all Loss" including loss from "the enforcement of this Agreement" is interpreted to include attorneys' fees because "indemnity agreements of this kind are interpreted generally to entitle the surety to recover" these types of losses. Atl. Contracting & Material Co. v. Ulico Cas. Co., 380 Md. 285, 302, 317 (2004).

Here, Defendants rely solely on Section 27.5 of the Agreement to argue that they should be awarded attorneys' fees under the contract, which provides in relevant part:

7

> If Franchisee violates a term or condition
> contained within this Agreement, including
> but not limited to, withholding any monies
> owed to Franchisor in the absence of a court
> order permitting the withholding of such
> monies, Franchisee shall reimburse
> Franchisor for all reasonable costs incurred
> by Franchisor in pursuing the enforcement of
> this Agreement.  These costs shall include,
> but not be limited to . . . reasonable
> attorneys' fees . . . . The recovery of the
> costs and fees specified above shall include
> the recovery of all costs and fees incurred
> by Franchisor relating to or arising from
> any and all defenses, counterclaims and/or
> crossclaims asserted by Franchisee or the
> personal guarantors under this Agreement.

Agreement § 27.5, ECF No. 10-2.[5]

This provision by itself does not appear to establish Plaintiffs' obligation to indemnify Defendants for fees incurred in the instant lawsuit.  Section 27.5 only requires Ms. Sumanth and Mr. Nandagopal to indemnify Kiddie Academy if they "violate[] a term or condition contained within this Agreement" and Kiddie Academy is forced to "pursu[e] the enforcement of this Agreement."  The provision also covers "defenses, counterclaims, and/or crossclaims" asserted by Ms. Sumanth and Mr. Nandagopal when defending an enforcement action by Kiddie

---

[5] The parties raise the question of whether the wording of the Franchise Disclosure Document has changed since the Plaintiffs signed their version in March 2014.  For purposes of this Motion, the Court will rely on the signed version of the Franchise Agreement between the instant parties, i.e., "Franchise Agreement By and between Kiddie Academy Domestic Franchising, LLC (Franchisor), and Wonder World Learning, LLC (Franchisee)," Def.'s Mot. Ex. A, ECF No. 10-2.

8

Academy. However, there is some ambiguity as to whether it requires Ms. Sumanth and Mr. Nandagopal to indemnify Kiddie Academy for any direct claim they first bring against Kiddie Academy for the breach of the Agreement. In other words, Section 27.5 clearly covers attorneys' fees in the event that Kiddie Academy sues the Franchisees for enforcement of the Agreement, but does not clearly cover attorneys' fees in the event that the Franchisees sue Kiddie Academy for misrepresentation or fraud.

Because Section 27.5 contains ambiguity, the Court will consider other provisions of the contract to determine the parties' intent. <u>Nova Research</u>, 405 Md. at 448. Based on a review of the entire contract, the Court notes that the parties have negotiated the payment of attorneys' fees in a variety of situations, including in an indemnification action brought by a third party:[6]

- Section 6.6 is entitled "Construction" and states: "Franchisee shall indemnify and hold Franchisor harmless against any and all claims, actions, causes of action, costs, fees, fines and penalties . . . should the design and/or construction of the Franchised Business fail in any way to comply with any applicable laws . . . ."

- Section 17.5 is entitled "Payment of All Monies Due" and provides for attorneys' fees in the event of termination or default. Specifically, it includes "all damages due . . .

---

[6] There are other similar provisions not included in this list because they do not apply here. <u>See, e.g.</u>, Section 18.8 (regarding attorneys' fees in enforcing the covenant not to compete).

9

including . . . attorneys' and experts' fees related to
and/or arising from any suits, claims or causes of action
brought by Franchisor, as well as defenses asserted by
Franchisor to any counterclaims or cross-claims brought by
Franchisee, incurred by Franchisor."

- Section 17.7 is entitled "Cost of Enforcement" and states
  that "Franchisee will pay to Franchisor all damages, costs
  and expenses, including, without limitation, reasonable
  attorneys' fees . . . incurred by Franchisor subsequent to
  the termination or expiration of this Agreement in
  obtaining injunctive or other relief for the enforcement of
  any provisions of this Agreement . . . ."

- Section 27.4 is entitled "Injunctive Relief" and states:
  "Should Franchisor obtain a restraining order or
  preliminary injunction against Franchisee, Franchisee shall
  be liable for all of Franchisor's attorneys' fees and costs
  that are related to and/or arise from obtaining such
  relief."

- Section 21.2 is entitled "Indemnification" and states:
  "Franchisee will indemnify and hold Franchisor . . .
  harmless against and from any and all claims arising either
  directly or indirectly from, as a result of, or in
  connection with the operation of the Franchised Business,
  as well as the costs, including attorneys' fees, of
  defending against them."[7]

These provisions do not explicitly provide for attorneys' fees to the Franchisor in the situation where the Franchisees first bring a lawsuit alleging claims related to the validity of the Agreement itself or other tort claims: <u>i.e.</u>, intentional and negligent misrepresentation, fraud in the inducement, and/or defamation. The record supports the finding that the parties to the agreement were sophisticated businesspersons, knew how to

---

[7] Under Maryland law, these types of indemnification provisions do not establish attorneys'fees for a first party suit between the parties to the contract. <u>Thomas</u>, 189 Md. App. at 449-50, 472; <u>Nova Research</u>, 405 Md. at 440-41, 451 (2008).

10

negotiate these agreements, and did not commit an oversight. Under the circumstances, the Court finds that the parties did not negotiate for fee shifting in the situation where the Franchisees first bring claims against Kiddie Academy, and declines to read such an obligation into the contract. Thomas, 189 Md. App. at 468 ("[c]ontractual attorney's fees provisions must be strictly construed to avoid inferring duties that the parties did not intend to create.").

Accordingly, the Court does not find that Section 27.5 of the Agreement, when read in conjunction with the remainder of the contract, provides for attorneys' fees in this situation.

### B. SANCTIONS BASIS FOR AWARD

An attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The "'unambiguous text of § 1927 aims only at attorneys who multiply proceedings,'" and "[b]ad faith on the part of the attorney is a precondition to imposing fees under § 1927." E.E.O.C. v. Great Steaks, Inc., 667 F.3d 510, 522 (4th Cir. 2012) (emphasis in original) (internal citations omitted).

Section 1927 is "unconcerned with the merits of the lawsuit" and "'does not distinguish between winners and losers,

or between plaintiffs and defendants.'" Id. Rather, it is "'concerned only with limiting the abuse of court processes.'" Id. Ultimately, the "standard for imposing sanctions on legal judgment is high, usually requiring vexatiousness, malfeasance, bad faith, or the like." In re Crescent City Estates, LLC, 588 F.3d 822, 830 (4th Cir. 2009) (citing 28 U.S.C. § 1927 and Fed. R. Civ. P. 11).

This Court also has the "inherent power" to "sanction members of the bar" by awarding attorneys' fees. Williams v. Family Dollar Servs., Inc., 327 F. Supp. 2d 582, 585 (E.D. Va. 2004) (awarding attorneys' fees for an attorney's failure to immediately file a stipulation of dismissal once given actual notice of his client's pre-existing civil action). This inherent power, together with Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, "may permit awards of attorneys' fees against attorneys whose actions compromise standards of professional integrity and competence." In re Crescent City Estates, LLC, 588 F.3d at 830-31. See also Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991) (explaining a court's inherent power to police parties and "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'") (internal citations omitted).

Under the circumstances, the Court cannot find any basis to impose sanctions on the Plaintiffs or their counsel in this

case. The Complaint was first filed in state court and then removed to federal court by Defendants. Plaintiffs have stated that they voluntarily dismissed the Complaint because they decided "to seek advice from Bankruptcy Counsel in Texas where they live and where the franchise is located" and to "discuss . . . options for pursuing the matter in Federal Court with counsel who regularly practice in the federal courts." Pl.'s Answer at 1, ECF No. 12. They state their intention to "refile in State, Federal, or Federal Bankruptcy Court in Texas where their business and home are located." Id. at 3. Plaintiffs have not "multiplied" the proceedings in an unreasonable and vexatious way. Rather, it appears that they made a decision very quickly – two days after Defendants' Motion to Dismiss was filed - to save the parties' and the Court's resources and consider other avenues of relief, including potential bankruptcy.

Defendants' argument that Plaintiffs withdrew their Complaint because they realized that their claims were meritless is not dispositive. Section 1927 relief is not granted based on the perceived weakness of a party's case. Great Steaks, 667 F.3d at 522–23 (4th Cir. 2012) ("Great Steaks' first contention concerning the weaknesses of the EEOC's case does not fall within the purview of § 1927, which 'focuses on the conduct of the litigation and not on its merits'") (internal citations

omitted).

Moreover, the Court declines to exercise its inherent power to impose attorneys' fees because on the current record, the Plaintiffs' actions have not "compromise[d] standards of professional integrity and competence." In re Crescent City Estates, LLC, 588 F.3d at 830-31. There is no plausible allegation of bad faith on the part of the Plaintiffs. Chambers, 501 U.S. at 45–46 (detailing a court's power to assess attorney's fees when "a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'") (internal citations omitted).[8]

Accordingly, the Court does not find sanctionable conduct and will not award attorneys' fees to Defendants on this basis.

III. CONCLUSION

For the foregoing reasons:

1. Defendants' Motion for Award of Attorneys' Fees and Costs is DENIED.

SO ORDERED, this Wednesday, January 24, 2018.

/s/
Marvin J. Garbis
United States District Judge

---

[8] Based on the record, the Court also declines to accept Plaintiffs' characterization of the Defendants' instant Motion as made in bad faith. Pl.'s Answer at 3, ECF No. 12.